**INCREDIBLE INVESTMENTS, LLC, Plaintiff,**

v.

**Katherine FERNANDEZ–RUNDLE, in her official capacity as State Attorney for Miami–Dade County, Florida, Defendant.**

**Case No. 13–22678–CIV:**

United States District Court, S.D. Florida.

Signed March 3, 2014.

Alan M. Dershowitz, Cambridge, MA, Victoria B. Eiger, New York, NY, Alan Jay Kluger, Justin Brett Kaplan, Kluger Kaplan Silverman Katzen & Levine PL, Miami, FL, for Plaintiff.

Jonathan A. Glogau, Attorney General Office, Allen C. Winsor, Office of the At-

torney General, Tallahassee, FL, for Defendant.

## ORDER

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court on Defendant's Motion to Dismiss the Amended Complaint. (D.E. 39.)

THE COURT has considered the motion and the pertinent portions of the record, and is otherwise fully advised of the premises.

## BACKGROUND

Plaintiff owns or operates one or more internet cafés where consumers may purchase the use of internet-capable terminals on a time-basis. Plaintiff claims that it promotes its sales in part through Game Promotions which have now been prohibited by Fla. Stat. §§ 849.094 & 849.16 (2013). On December 3, 2013, Plaintiff filed a 16–count Amended Complaint challenging the constitutionality of the 2013 amendments to Fla. Stat. §§ 849.094 & 849.16. Plaintiff seeks a declaratory judgment that Fla. Stat. §§ 849.094 & 849.16 are unconstitutional under the following theories [1]:

(i) Fla. Stat. § 849.094, which permits nationally advertised Game Promotions or Game Promotions conducted by retailers who operate such promotions in and outside of Florida, does not allow Game Promotions that are advertised or conducted solely in Florida in violation of the Equal Protection Clause of the United States Constitution (Count I);

(ii) Fla. Stat. § 849.094 prohibits commercial speech in violation of the First Amendment of the Constitution and Art. I, Sec. 4 of the Florida Constitution because it bans Plaintiff, a wholly local retailer, from utilizing Game Promotions as a method by which to market and promote the sale of a service, *i.e.*, internet access and usage (Counts II & III);

(iii) Fla. Stat. § 849.16 prohibits commercial speech in violation of the First Amendment of the Constitution and Art. I, Sec. 4 of the Florida Constitution because it contains content and speaker-based restrictions on commercial speech in so far as it restricts who may conduct Game Promotions and how the results of the Game Promotions may be communicated to customers (Counts IV & V);

(iv) Fla. Stat. § 849.16 violates the First Amendment of the Constitution and Art. I, Sec. 4 of the Florida Constitution because it proscribes expressive conduct—here, Plaintiff's conduct of a sweepstakes promotion (Counts VI & VII);

(v) Fla. Stat. § 849.16 limits the promotion of a product, *i.e.*, access to the internet, used to communicate information and ideas, and in so doing, violates the First Amendment of the Constitution and Art. I, Sec. 4 of the Florida Constitution (Counts VIII & IX);

---

1. It is unclear from the Amended Complaint whether Plaintiff is bringing a facial or an as-applied challenge to Sections 849.16 and 849.094; however, the relief requested implies that Plaintiff seeks to invalidate the contested statutes. (*See, e.g.*, Compl. at 43 ("Plaintiff, INCREDIBLE INVESTMENTS, LLC, respectfully requests that this Court enter a declaratory judgment that Fla. Stat. § 849.16, as amended, is unconstitutional, prohibit the State of Florida from enforcing same....")). Nevertheless, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). "The distinction ... goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Id.*

(vi) Fla. Stat. § 849.16 includes a rebuttable presumption that relieves the State of Florida of the burden of persuasion that the device owned, possessed or operated is a slot machine in violation of the Due Process Clause of the Fifth Amendment of the Constitution and Art. I, Sec. 9 of the Florida Constitution (Counts X & XI);

(vii) Fla. Stat. § 849.16 is overbroad in violation of the First and Fourteenth Amendments of the Constitution as well as corresponding provisions of the Florida Constitution because it defines prohibited "slot machines" in a manner that encompasses many types of electronic devices that are used to access the internet and thereby prohibits both constitutional and unconstitutional activities, including the speech engaged in by Plaintiff in the form of the sweepstakes games (Counts XII & XIII);

(viii) Fla. Stat. § 849.16 is unconstitutionally vague in violation of the Fifth Amendment of the Constitution and Art. I, Sec. 9 of the Florida Constitution because the definition of slot machine fails to adequately describe the prohibited machine or device such that a person of common understanding cannot know what is forbidden (Counts XIV & XV); and

(ix) Fla. Stat. § 849.16 violates the Dormant Commerce Clause of the Constitution because it excessively regulates interstate commerce in relation to the putative local benefits (Count XVI).

## PROCEDURAL HISTORY

This case is before the Court for a second time on a Motion to Dismiss. On November 13, 2013, the Court granted Defendant's Motion to Dismiss the Original Complaint because Plaintiff failed to allege sufficient facts to state a constitutional claim under the First, Fifth and Fourteenth Amendments, the corresponding Florida Constitution provisions, and the Dormant Commerce Clause. 984 F.Supp.2d 1318 (S.D.Fla.2013). In great detail, the Court outlined the standard for each constitutional claim, how Plaintiff had failed to meet that standard, and information that would be helpful in determining whether Plaintiff's Game Promotions and Game Displays were protected forms of speech. The Court granted leave to amend the Original Complaint and on December 3, 2013, Plaintiff filed an Amended Complaint. On December 19, 2013, Defendant moved to dismiss the Amended Complaint in its entirety pursuant to Fed. R.Civ.P. 12(b)(6). The motion is now fully briefed and ripe for review.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim, the Court takes the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir.2010). Conclusory allegations will not suffice; the complaint must allege sufficient facts to state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). This means that the factual content of the complaint must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards*, 602 F.3d at 1291 (quoting *Rivell v. Private Health Care Systems, Inc.*, 520 F.3d 1308, 1309 (11th Cir.2008)).

## DISCUSSION

With respect to all claims, Plaintiff seeks relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. For the reasons set forth in the Court's Order dated November 13, 2013, the Court concludes that the Federal Declaratory Judgment Act applies and that the allegations are sufficient to satisfy the actual controversy requirement of 28 U.S.C. § 2201. *See* 984 F.Supp.2d at 1323–25.

▮▮▮▮ In addition, Plaintiff seeks relief under 42 U.S.C. § 1983 with respect to all claims arising under the United States Constitution. To state a Section 1983 claim, a plaintiff must allege that the defendant acted under color of state law to deprive the plaintiff of a federal right. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) & *Flagg Bros. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)). "To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State … or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* at 49, 108 S.Ct. 2250. (internal quotation marks and citations omitted). "State employment is generally sufficient to render the defendant a state actor." *Id.* (internal quotation marks and citations omitted). The "under color of state law" requirement is satisfied here because Fla. Stat. §§ 849.16 & 849.094 were enacted and amended by the Florida Legislature and as the State Attorney for Miami–Dade County, FL, the Defendant is charged with enforcing the statutes.

The facts that a plaintiff must plead in order to allege the violation of a federal right depend upon the right allegedly violated—here, the Plaintiff alleges violations of the First, Fifth and Fourteenth Amendments as well as the Dormant Commerce Clause. *See, e.g., Iqbal,* 556 U.S. at 676, 129 S.Ct. 1937 (explaining that "[w]here the claim is invidious discrimination in contravention of the First and Fifth Amendments, … the plaintiff must plead and prove that the defendant acted with discriminatory purpose"). The Court will address each count alleged in the Amended Complaint in turn.

### Discussion: First Amendment

Counts II through IX and Counts XII through XIII raise claims arising under the First Amendment of the Constitution or Article I, Section 4 of the Florida Constitution. For the reasons below, the Court finds that Plaintiff again has failed to allege sufficient facts to state a claim to relief and as a result, these claims will be dismissed.

*Count II*

In Count II, Plaintiff alleges that its "Game Promotions constitute commercial speech in that they are a form of advertising or marketing designed to promote the sale of a product or service and to motivate customers to buy that product or service, to wit access to the internet." (Am. Compl. ¶ 76.) According to the Plaintiff, Fla. Stat. § 849.094, as amended, permits "retailers that operate game promotions in Florida and elsewhere (or entities that nationally advertise)" to conduct Game Promotions in Florida, but "bans the Plaintiff from utilizing Game Promotions as a method by which to market and promote the sale of the goods and services" because its commercial activities are wholly intrastate. (Am. Compl. ¶¶ 79–80.) Plaintiff further alleges that the "ban unconstitutionally infringes on protected commercial speech in that it prevents the Plaintiff from engaging in an advertising and marketing tool other retailers can en-

joy if they have the wherewithal to conduct such promotions both in Florida and other states or advertise them nationally."[2] (Am. Compl. ¶ 81.)

Fla. Stat. § 849.094 is an exception to Fla. Stat. § 849.09, which prohibits the operation of lotteries. *Bill Analysis & Fiscal Impact Statement for S.B. 1030,* Fla. Leg., at 2 (2013). Pursuant to Section 849.094, "operators" of "game promotions" may conduct such promotions in Florida subject to the requirements of Section 849.094(2). In relevant part, Section 849.094 states:

(1) As used in this section, the term:

(a) "Game promotion" means, but is not limited to, a contest, game of chance, sweepstakes, or gift enterprise, conducted by an operator within or throughout the state and other states in connection with and incidental to the sale of consumer products or services, and in which the elements of chance and prize are present. However, "game promotion" may not be construed to apply to bingo games conducted pursuant to s. 849.0931.

(b) "Operator" means a retailer who operates a game promotion or any person, firm, corporation, organization, or association or agent or employee thereof who promotes, operates, or conducts a nationally advertised game promotion.

It is the "within or throughout the state and other states" phrase found in Section 849.094(1)(a) and the definition of "operator" found in Section 849.094(1)(b) that is at issue here.

■ In its Order dated November 13, 2013, the Court previously addressed Plaintiff's allegation that the definition of "operator" found in Section 849.094(1)(b) only allows business entities who nationally advertise to conduct Game Promotions. 984 F.Supp.2d at 1326–27. Through her representation of Defendant Katherine Fernandez–Rundle, who is being sued in her official capacity as State Attorney for Miami–Dade County, Florida, the Attorney General of Florida has interpreted the definition of "operator" to include "a retailer who operates a game promotion ... regardless of its advertising." D.E. 8 at 4. "When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Considering the plain language of the statute and in accordance with the Defendant's interpretation, this Court found that Plaintiff misread the statute because Section 849.094(1)(b) clearly applies to a retailer who conducts a Game Promotion regardless of whether the retailer advertises nationally. Plaintiff by its own allegation is a retailer. (Am. Compl. ¶ 57.) Therefore, the Court again finds that Plaintiff misreads the statute with respect to its interpretation that retailers must advertise nationally in order to conduct Game Promotions in Florida.

In response to Plaintiff's contention that the "within or throughout the state and other states" phrase found within the definition of "game promotion" in Section 849.094(1)(a) allows Game Promotions conducted ·in Florida *and* elsewhere but not solely in Florida, Defendant makes the following arguments: (i) Section 849.094 permits Game Promotions conducted by

---

**2.** The Court notes that Plaintiff's alleges that its injury is as a result of changes made in April 2013 to Section 849.094. (Am. Compl. ¶ 5, 44–46.) However, the "within or throughout the state and other states" phrase found in Section 849.094(1)(a) was added to Fla. Stat. § 849.094 in 1983 to replace an exemption for operators who conducted Game Promotions in less than 3 retail outlets. *See* Fla. Laws ch. 83–118.

intrastate and interstate operators because in 1983 when Section 849.094 was amended to include the phrase "within or throughout the state and other states," a prohibition on Game Promotions conducted in less than three retail establishments was simultaneously deleted; (ii) "the 1983 amendment caused the statute to encompass even promotions conducted at single facilities;" and (iii) a "single establishment game promotion would be inherently intrastate." D.E. 39 at 5.

However, before the Court can reach the question of whether Fla. Stat. § 849.094 impinges on Plaintiff's First Amendment commercial speech rights by prohibiting its Game Promotions under any circumstances, the Court must first resolve whether the activity at issue, Game Promotions, rises to the level of commercial speech. Commercial speech is "defined as speech that does no more than propose a commercial transaction." *United States v. United Foods, Inc.*, 533 U.S. 405, 409, 121 S.Ct. 2334, 150 L.Ed.2d 438 (2001); *Cent. Hudson Gas and Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (finding that commercial speech is "expression related solely to the economic interests of the speaker and its audience").

The Court found in its earlier Order that Plaintiff had failed to allege how the Game Promotions constitute commercial speech. This defect persists in the Amended Complaint. Although Plaintiff has included several allegations describing how the Game Promotions function (the actions taken by a customer or one of Plaintiff's employees), there are no allegations illustrating or describing the content of the speech conveyed by Plaintiff's Game Promotion or the communicative activity that is regulated by Section 849.094. In fact, Plaintiff avoids describing the speech by simply stating that "[a] potential customer learns of the Plaintiff's Game Promotions." (Am. Compl. ¶ 30.) What a customer learns about the Game Promotion is the speech that is allegedly protected by the First Amendment because the content of that promotion or advertisement proposes a commercial transaction and draws the customer to Plaintiff's internet café. *See e.g. Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 62–68, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983) (finding the content of flyers and pamphlets to be commercial speech). Due to the lack of allegations describing the speech conveyed by Plaintiff's Game Promotions, the Court need not reach whether the Plaintiff satisfies the four-factor test set forth in *Central Hudson*.

Even if the Court had sufficient information to determine that the Game Promotions constitute commercial speech, the Court finds that Plaintiff's allegations still fail to state a claim upon which relief may be granted. Based on the plain language of the statute, the legislative history, and in accordance with the Attorney General of Florida's interpretation (*see* D.E. 39 at 5), the "within or throughout the state and other states" phrase found in Section 849.094(1)(a) does not operate to ban retailers that only conduct Game Promotions in Florida. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."); *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 933 (11th Cir.2000) ("Questions of statutory interpretation are pure questions of law."); *Lockheed Martin Corp. v. The Boeing Co.*, No. 6:03–cv–796–Orl–28KRS, 2003 WL 22962789, at *2 (M.D.Fla. Oct. 28, 2003) ("In deciding whether dismissal is required, it is entirely appropriate for a court to consider and resolve questions of

statutory interpretation."); *Garcia v. Swire Pac. Holdings, Inc.*, No. 09–23839, 2010 WL 1524230, at *4 (S.D.Fla. Apr. 14, 2010) (dismissing with prejudice Count III based on statutory interpretation).

As noted above, in 1982, Section 849.094 was understood to be an exception to Florida's laws prohibiting the operation of lotteries. *Final Staff Summary for H.B. 145*, Fla. Leg., at 2 (1983). In 1983, Section 849.094 was amended to include the "within or throughout the state and other states" phrase and according to the legislative history, "[t]he definition of game promotion [was] changed to clarify that any game promotion conducted in Florida must comply with s. 849.094, F.S." *Senate Staff Analysis and Economic Impact Statement for S.B. 682*, Fla. Leg., at 1 (1983). Attached to the Senate Staff Analysis and Economic Impact Statement for S.B. 682 are letters from the Attorney General's Office of Florida ("AGOF"), which was responsible for registering Game Promotions and enforcing Section 849.094 in 1982. *Id.* According to the letters, the amendment of Section 849.094 was sparked by numerous calls to the AGOF from those in the Game Promotion industry and their attorneys, as well as discussions within the AGOF, because they understood that as the statute existed in 1982, Section 849.094 only applied to national Game Promotions, *i.e.*, those that were conducted in Florida and at least one other state. *Id.* Additionally, the letters show that prior to the amendment, Game Promotions conducted only within Florida were, strictly speaking, unlawful lotteries because they did not "fall squarely within the exception [to the lottery laws] provided by § 849.094." *Id.* In other words, because Section 849.094 was interpreted as creating an exception to the laws prohibiting lotteries for national Game Promotions but not those conducted solely in Florida, the AGOF's believed that Section 849.094 had to be amended "to permit in-state game promotions." *Id.*

Given the legislative history, the Court finds that the intent of the Florida Legislature was to allow operators to conduct Game Promotions solely in Florida as well as national operators or advertisers, so long as they did not run afoul of Section 849.094(2). Therefore, the Court must construe the "within or throughout the state and other states" phrase found in Section 849.094(1)(a) to permit Game Promotions conducted solely within the state of Florida. As a result, Count II fails to state a claim for relief as a matter of law and will be dismissed.

*Count IV*

■ In Count IV, Plaintiff alleges that its "Game promotions constitute commercial speech in that they are a form of advertising or marketing that promote the sale of a product or service and proposes a commercial transaction." (Am. Compl. ¶ 103.) Plaintiff further alleges that Fla. Stat. § 849.16 "contains content and speaker based restrictions on commercial speech because it delineates not only who may conduct game promotions (retailers who operate both inside and outside Florida and those who engage in national advertising), but how the results of those promotions may be communicated to customers, permitting the communication of sweepstakes results, but not via computer displays." (Am. Compl. ¶ 104.) The Court finds that Count IV should be dismissed for the same reasons as Count II. As discussed above, Plaintiff has failed to allege any facts to support the conclusion that its Game Promotions constitute commercial speech. Plaintiff has merely recited the definition of commercial speech and has not alleged the content of the commercial speech that is prohibited.

■ Moreover, the Court finds that Plaintiff's allegation that Section 849.16

contains content and speaker based restrictions on commercial speech—here, Plaintiff's Game Promotions which provide sweepstakes game entries that entitle the consumer to win prizes—is directly contradicted by the statute and insufficient to show a First Amendment violation for the following reasons.

First, a speaker-based restriction distinguishes among different speakers by allowing speech by some but not others. *Citizens United*, 558 U.S. at 340, 130 S.Ct. 876. Section 849.16 does not make a distinction as to who may conduct Game Promotions, be it retailers inside or outside of Florida, operators who advertise nationally, or otherwise. In fact, Section 849.16 does not refer to Game Promotions at all and is solely focused on defining a slot machine or device.

Second, a content-based restriction is one that regulates speech on the basis of its subject matter, messages, ideas and content. *United States v. Alvarez*, —— U.S. ——, 132 S.Ct. 2537, 2543, 183 L.Ed.2d 574 (2012); *Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 536, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980). Plaintiff has not identified the content that allegedly has been restricted by Section 849.16. Furthermore, a plain reading of Section 849.16 shows that Plaintiff is prohibited from using its computer terminals in a manner in which a user, through skill or chance, may receive an item of value. Section 849.16, on its face, targets conduct and operates irrespective of the content of the Game Promotions. Lastly, by its own allegation, albeit contrary to other allegations made in the Amended Complaint, Section 849.16 does not contain a content-based restriction because it "permits the

communication of sweepstakes results, but not via computer displays." (Am. Compl. ¶ 104.) This allegation refers to a restriction on the manner in which Plaintiff may engage in commercial speech. The Court has previously addressed this issue and for the reasons outlined in its Order dated November 13, 2013, the Court makes the same finding now that this argument lacks merit. *See* 984 F.Supp.2d at 1327–29.

For these reasons, even if the Court were to assume that Plaintiff's Game Promotions are commercial speech, the Court finds that Section 849.16 does not impose a speaker or content-based restriction on Plaintiff's Game Promotions because it targets conduct and does not include a distinction between speakers. As a result, Count IV will be dismissed.

*Count VI*

In Count VI, Plaintiff alleges that Section 849.16 unconstitutionally proscribes expressive conduct—here, Plaintiff's conduct of a sweepstakes promotion that promotes the purchase of internet access. (Am. Compl. ¶¶ 124–25.) Although unclear, Plaintiff seems to be alleging that Section 849.16 unlawfully bans its Game Display, which is used as a way to create excitement so that consumers will purchase access to the internet.[3] (Am. Compl. ¶¶ 27, 28, & 30.) Plaintiff does not allege that its other methods of conducting its Game Promotions, a customer asking one of Plaintiff's employees to reveal the results of the Game Promotions or choosing the Quick Reveal option on his or her computer, have been proscribed by Section 849.16. (Am. Compl. ¶¶ 25–26.)

To determine whether an act is expressive conduct, this Court must deter-

---

**3.** In the event that Plaintiff is alleging that Section 849.16 proscribes its Game Promotions, the Court has already addressed this issue and found that Plaintiff has failed to allege sufficient facts to show that its Game Promotions rise to the level of First Amendment protection. *See supra* pp. 1280–81.

mine whether an "intent to convey a particularized message was present" and "in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Dimmitt v. City of Clearwater,* 985 F.2d 1565, 1569 n. 2 (11th Cir.1993) (quoting *Spence v. Washington,* 418 U.S. 405, 410–11, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974)) (internal quotation marks omitted). If explanatory speech is necessary, it is strong evidence that the conduct at issue is not sufficiently expressive to rise to the level of First Amendment protection. *Rumsfeld v. Forum for Academic & Institutional Rights,* 547 U.S. 47, 65–66, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006).

Exhibit A to the Amended Complaint is a representative example of Plaintiff's Game Display method of communicating the results of its Game Promotions. These screen shots show the number of entries the consumer has to play, the total jackpot enabled and the monetary value of the prize. (Am. Compl. Ex. A.) The Game Display invites the customer to "click to open" several images and once opened, images of grapes, cherries and lemons are displayed. According to Plaintiff, "the images behind the doors are revealed to expose various combinations or patterns that signify either a 'win' or not." (Am. Compl. ¶ 30(k).) In addition, Plaintiff alleges that the "Game Display program communicates the Game Promotion result to the consumer ... by exposing hidden images or moving graphic images around the computer screen ... then displaying them in a series that matches a certain number of like images (if a 'winner') or in various series that do not have multiple duplicate images adjacent to each other." (Am. Compl. ¶ 30(1).) The Court makes no ruling on whether Plaintiff's Game Displays are slot machines within the meaning of Sections 849.15 and 849.16 or a form of gambling because that issue is not properly before

the Court. However, to say that these screen shots or Plaintiff's description of the Game Display show that it's Game Displays constitute expressive conduct stretches credulity.

In its previous Order, dated November 13, 2013, this Court found that Plaintiff's Game Displays do not warrant First Amendment protection because they merely communicate the results of the Game Promotions, not ideas. *See* 984 F.Supp.2d at 1328–29; *Brown v. Entm't Merchs. Ass'n,* — U.S. ——, 131 S.Ct. 2729, 2733, 180 L.Ed.2d 708 (2011); *There to Care, Inc. v. Comm'r of Indiana Dep't of Revenue,* 19 F.3d 1165, 1167 (7th Cir.1994). The Court makes the same finding here.

Furthermore, the Court has considered Plaintiff's argument that the challenged statutes run afoul of protected First Amendment rights because they regulate the marketing of internet access and the manner in which the Plaintiff may solicit business. D.E. 40 at 10–13. In support of this argument, Plaintiff cites, among others, *Board of Trustees of State University of New York v. Fox,* 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989), for the proposition that solicitation activities are protected speech. The Court finds that these cases are inapposite for the very reason Plaintiff chooses to rely on them. What these cases have in common is a factual basis that shows what the marketing activity consisted of and how the statute at issue imposed a burden on the marketing activity. For example, in *Fox,* the tupperware parties were found to be communicative activity because it was a way to market products through demonstrating and offering products for sale to prospective buyers. 492 U.S. at 472–474, 109 S.Ct. 3028. Here, Plaintiff does not provide the content of the solicitation, its Game Promotions, or how this content

serves to market internet access. Therefore, Count VI will be dismissed.

*Count VIII*

▆ In Count VIII, Plaintiff alleges that Section 849.16 limits the promotion of a product, *i.e.*, access to internet enabled computers, which "are used for the communication of information and ideas, and are central to the exercise of freedom of speech in the twenty-first century world." (Am. Compl. ¶¶ 149–50.) At the core of Plaintiff's allegations is the idea that computers with internet access are central to the exercise of freedom of speech; yet, Plaintiff provides no estimate of the number of its customers who actually use the internet versus those who only use its internet cafés to participate in its Game Promotions. (Am. Compl. ¶ 39 n. 1.)

Fla. Stat. § 849.15 makes it unlawful to, among other things, own, keep, or permit the operation of a slot machine. Section 849.16 defines a slot machine as a machine, device or network of devices that upon activation by an account number, code, or other information entitles the user, through the application of skill or an element of chance, to receive an item of value. Although Plaintiff's computers may have internet capability, they arguably fall into the definition of slot machine because they are unlocked by a cashier and the consumer, through an element of chance, may win a prize (and never access the internet). (Am. Compl. ¶¶ 15, 20–21, 30–31.) A plain reading of Section 849.16 shows that Plaintiff could promote internet access via its computer terminals provided it did not also promote use of its computer terminals in a manner in which a user, through skill or chance, may receive an item of value. In other words, Plaintiff has failed to include any allegations regarding how Section 849.16 has hindered it from promoting access to the internet via its computers by methods other than its Game Promotions. Therefore, Count VIII will be dismissed.

*Count XII*

▆ In Count XII, Plaintiff alleges that Section 849.16 is overbroad because "it proscribes the possession in Florida of devices such as smartphones and computers and makes unlawful broad swaths of economic and other activity," some of which are protected by the First Amendment. (Am. Compl. ¶ 201.) A statute is overbroad "if it prohibits a substantial amount of protected speech." *United States v. Williams,* 553 U.S. 285, 292, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Plaintiff does not specifically allege how the overbreadth of Section 849.16 affects protected speech in relation to its Game Promotions or its use of a Game Display to communicate the results of the Game Promotion. The allegations center on the scope of Section 849.16 and Plaintiff alleges that Section 849.16 bans the possession of various devices for accessing the internet or the completion of an activity. As the Court discussed above, Section 849.16, in conjunction with Section 849.15, targets conduct (owning, keeping or permitting the operation of a slot machine) and Plaintiff has failed to allege what comprises the protected speech banned by Section 849.16.

In the event Plaintiff is alleging that Section 849.16 proscribes commercial speech, it is well settled that the overbreadth doctrine does not apply to commercial speech. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (quoting *Central Hudson,* 447 U.S. at 565 n. 8, 100 S.Ct. 2343). Therefore, Count XII fails as a matter of law and will be dismissed.

*Counts III, V, VII, IX, & XIII*

The counterpart state law claims that arise under Art. I, Sec. 4 of the Florida

Constitution fail for the reasons stated above. *See The Florida Bar v. Fetterman,* 439 So.2d 835, 839–40 (Fla.1983) (applying federal law on commercial speech to commercial speech claim under Florida Constitution); *Dep't of Educ. v. Lewis,* 416 So.2d 455, 461 (Fla.1982) ("The scope of the protection accorded to freedom of expression in Florida under Article I, Section 4 is the same as is required under the First Amendment."). Counts III, V, VII, IX, and XIII will be dismissed.

### *Discussion: Fifth Amendment*

In Counts X through XI and XIV through XV, Plaintiff alleges that Fla. Stat. § 849.16 violates due process guarantees under the federal and Florida Constitution because it is vague and creates an improper evidentiary presumption of illegality. For the reasons set forth below, Plaintiff has again failed to allege enough facts to state a claim for relief and as a result, these claims will be dismissed.

*Count X: Due Process Claim*

Plaintiff alleges that Fla. Stat. § 849.16(3) "creates an evidentiary presumption that relieves the State of Florida of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." (Am. Compl. ¶ 169.) According to Plaintiff, Section 849.16(3) "violates the Due Process Clause because the State of Florida has been relieved of its burden of persuasion on one [or] more elements it is required to prove in order to obtain a conviction for violation of Section 849.15, Florida Statutes: that the device owned, possessed or operated is a 'slot machine.'" (Am. Compl. ¶ 174.) .

■■■■■■ "[A] violation of procedural due process is not complete unless and until a State refuses to provide due process ... or a means to remedy the deprivation." *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1294 (11th Cir.2007). Plaintiff

alleges that it has a "reasonable fear of imminent enforcement of" Sections 849.16 and 849.094. Plaintiff has not alleged that any charges or an enforcement action have been brought. Therefore, Plaintiff has failed to allege a violation of the Due Process Clause.

■■■■ Moreover, in order to show that an evidentiary or rebuttable presumption violates the Due Process Clause, Plaintiff must show that the presumption "relieve[s] the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis v. Franklin,* 471 U.S. 307, 313, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). The focus is on the specific language challenged. *Id.* at 315, 105 S.Ct. 1965.

In full, Section 849.16(3) states:

There is a rebuttable presumption that a device, system, or network is a prohibited slot machine or device if it is used to display images of games of chance and is part of a scheme involving any payment or donation of money or its equivalent and awarding anything of value.

Plaintiff alleges that Section 849.16(3) violates the Due Process Clause because the State of Florida does not need to prove that the device owned, possessed or operated is a slot machine. (Am. Compl. ¶ 174.) Whether a device is a slot machine is a legal conclusion and in order to violate the Due Process Clause, Section 849.16(3) must relieve the State of Florida of proving a factual element. Plaintiff has not alleged that Section 849.16(3) relieves State of Florida from proving a factual element of a crime and as a result, Count X will be dismissed.

*Count XIV: Void for Vagueness Claim*

■■■■ Plaintiff alleges that Section 849.16 "fails to adequately describe the prohibited machine or device such that a person of common understanding cannot

know what is forbidden" and "provides the opportunity for arbitrary and discriminatory enforcement by law enforcement in all its applications, in violation of fundamental notions of due process." (Am. Compl. ¶¶ 236–37.) Plaintiff further alleges that as a result of Section 849.16, "the Plaintiff has become 'chilled' from engaging in constitutionally protected conduct; specifically, commercial speech or expressive conduct." (Am. Compl. ¶ 238.) "Vagueness arises when a statute is so unclear as to what conduct is applicable that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Indigo Room, Inc. v. City of Fort Myers,* 710 F.3d 1294, 1301 (11th Cir.2013) (quoting *Mason v. Fla. Bar,* 208 F.3d 952, 958 (11th Cir.2000)). A court will "review statutes for vagueness concerns only when a litigant alleges a constitutional harm." *Indigo Room, Inc.,* 710 F.3d at 1301 (quoting *Bankshot Billiards, Inc. v. City of Ocala,* 634 F.3d 1340, 1349 (11th Cir.2011)). When a litigant asks the court to review a vague statute prior to its enforcement, the harm is that "the litigant is chilled from engaging in constitutionally protected activity." *Id.*

■■■ Once again Plaintiff has merely recited the elements for a void for vagueness claim and has failed to allege a constitutional harm. The alleged constitutional harm Plaintiff refers to is the prohibition of commercial speech and expressive conduct, *i.e.,* Plaintiff's Game Promotions and Plaintiff's conduct of its Game Promotions. As discussed above, Plaintiff has failed to allege the expressive content of its Game Promotions. Moreover, the conduct alleged here is Plaintiff's operation of its sweepstakes promotion, namely its Game Displays, and the Game Displays unaccompanied by expressive content are not entitled to First Amendment protection for the reasons discussed above. Although Plain-

tiff may be "chilled from engaging in an activity in which it once engaged, that activity is not constitutionally protected; rather, it is normal business activity." *Indigo Room, Inc.,* 710 F.3d at 1301 (quoting *Bankshot Billiards, Inc.,* 634 F.3d at 1350). Thus, Count XIV will be dismissed.

### Counts XI and XV

The counterpart state law claims that arise under Art. I, Sec. 9 of the Florida Constitution fail for the reasons stated above. *See Fla. Ass'n of Prof'l Lobbyist, Inc. v. Div. of Legislative Info. Servs.,* 525 F.3d 1073, 1076 n. 3 (11th Cir.2008) (noting that the same test applies for vagueness challenges brought under the Florida and United States Constitution); *State v. Rygwelski,* 899 So.2d 498, 502 (Fla.App.2005) (analyzing Florida law on rebuttable presumptions and as with the framework under the federal Constitution, noting that Florida law "requires that the state prove each element of a criminal offense"). Therefore, Counts XI and XV will be dismissed.

### Discussion: Equal Protection Clause of the Fourteenth Amendment

■■■ In order to state a valid equal protection claim, Plaintiff must allege that the statute in question either singles out a suspect class or impinges on a fundamental right. *Estate of McCall ex rel. McCall v. United States,* 642 F.3d 944, 950 (11th Cir.2011). If the statute does not fulfill either of these requirements, the statute is subject to a rational-basis review. *Id.* "When applying rational basis review, [a court] must uphold the statute against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* Furthermore, under such a review, Plaintiff has the burden "to negative every conceivable basis which might

support [the classification]." *Id.* (internal quotation marks omitted.)

As with Count II, Plaintiff's claim is based on a misreading of Section 849.094. In Count I, Plaintiff alleges that Section 849.04 "violates the Plaintiff's right to equal protection under the law because similarly situated businesses that conduct game promotions in and outside Florida or who advertise their game promotions nationally are expressly permitted to employ the use of game promotions" and prevents Plaintiff "from conducting a game promotion unless it also conducts a game promotion in at least one other State or engages in national advertising." (Am. Compl. ¶ 64.) Plaintiff alleges that it is a retailer. (Am. Compl. ¶ 57.) Based on a plain reading of Section 849.094 and in accordance with the Attorney General of Florida's interpretation and the legislative history, retailers, regardless of where they advertise, may operate a Game Promotion so long as it conforms to the requirements of Section 849.094(2). Therefore, Count I will be dismissed.

### Discussion: Dormant Commerce Clause

Pursuant to U.S. Const., Art. I, § 8, cl. 3, Congress has the power "[t]o regulate Commerce ... among the several States...." "Although the Constitution does not in terms limit the power of States to regulate commerce, [the Supreme Court has] long interpreted the Commerce Clause as an implicit restraint on state authority, even in the absence of a conflicting federal statute." *United Haulers Ass'n v. Oneida–Herkimer Solid Waste Mgmt. Auth.,* 550 U.S. 330, 338, 127 S.Ct. 1786, 167 L.Ed.2d 655 (2007); *see also Bainbridge v. Turner,* 311 F.3d 1104, 1108 (11th Cir.2002) ("Although the clause speaks literally only to the powers of Congress, it is well settled that it has a 'dormant' aspect as well, namely, one that

serves as 'a substantive restriction on permissible state regulation of interstate commerce.' "). To determine whether a statute violates the Dormant Commerce Clause, a court must assess whether it discriminates on its face against interstate commerce, which means it treats in-state economic interests differently than out-of-state economic interests. *United Haulers Ass'n,* 550 U.S. at 338, 127 S.Ct. 1786. Plaintiff does not allege that Fla. Stat. § 849.16 is discriminatory. (Opp'n at 19–20.) Instead, Plaintiff relies on *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), which held that "[w]here the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."

Plaintiff fails to allege any facts in support of its conclusory allegations that Section 849.16 excessively burdens interstate commerce. In its Amended Complaint, Plaintiff merely states that "Section 849.16 regulates or proscribes conduct that the State of Florida is powerless to regulate or proscribe such as, for example, online auctions, 'march madness pools,' airline, hotel, or library book reservation systems, and on-line commerce as a whole, ... precluding residents of Florida or visitors of the State to engage in such activities in the State of Florida." (Am. Compl. ¶ 254.) Plaintiff goes on to state that Section 849.16 "impermissibly and excessively regulate[s] and interfere[s] with interstate commerce" and that the "burden imposed on such commerce [specifically, e-commerce,] is excessive in relation to the putative local benefits." (Am. Compl. ¶ 255–58.) These bare bones allegations and threadbare recitals of the elements of a claim under the Dormant Commerce Clause are

insufficient to state a violation of the Dormant Commerce Clause and as a result, Count XVI will be dismissed.

## *CONCLUSION*

As a final matter, the Court must consider whether the Amended Complaint should be dismissed with or without prejudice. In its previous Order dismissing the Original Complaint, the Court took great pains to delineate the deficiencies within the Original Complaint and granted leave to amend so that Plaintiff could set forth sufficient facts to state a claim under the First, Fifth and Fourteenth Amendments, the corresponding Florida Constitution provisions and the Dormant Commerce Clause. Absent a showing that Defendant's enforcement of Sections 849.094 and 849.16 violate Plaintiff's rights under those provisions, Plaintiff's constitutional claims fail as a matter of law. *Edwards,* 602 F.3d at 1291 ("A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face.") (quoting *Sinaltrainal v. Coca–Cola Co.,* 578 F.3d 1252, 1260 (11th Cir.2009)). Tellingly, the same deficiencies persist with respect to the Amended Complaint, leading to the conclusion that Plaintiff cannot meet the standard for pleading each constitutional claim. As a result, the Court finds that no good cause exists to allow Plaintiff to amend its Complaint for the second time. Accordingly, it is hereby

ORDERED AND ADJUDGED that the motion (D.E. 39) is GRANTED. It is further

ORDERED AND ADJUDGED that the Amended Complaint is DISMISSED WITH PREJUDICE. It is further

ORDERED AND ADJUDGED that for administrative purposes this case is hereby CLOSED and all pending motions DENIED AS MOOT.